UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEE LATOSKI,

      Plaintiff,                    Civil Action No. 12-13293

v.                              HON. STEPHEN J. MURPHY, III
                                    U.S. District Judge
                                    HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert Lee Latoski ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment  be DENIED.

## PROCEDURAL HISTORY

Plaintiff applied for DIB September 22, 2009 alleging disability as of December 1, 2006, later amending the onset of disability date to March 30, 2007 (Tr. 116, 123).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on April 8, 2011

before Administrative Law Judge ("ALJ") George Gaffaney (Tr. 7).  Plaintiff, represented by attorney John Morosi, testified, (Tr. 13-34), as did Vocational Expert ("VE") Juletta Harren (Tr. 35-41).  On November 23, 2011, ALJ Gaffaney found Plaintiff not disabled as of date last insured ("DLI") of December 31, 2010 (Tr. 60).  On June 19, 2012, the Appeals Council denied review (Tr. 1-5).  Plaintiff filed for judicial review of the Commissioner's decision on July 26, 2012.

## BACKGROUND FACTS

Plaintiff, born February 3, 1962 was 48 on the DLI of December 31, 2010 and 49 when ALJ Gaffaney issued his decision (Tr. 60, 116).  He completed 12th grade and received training in truck and automotive repair (Tr. 155).  He worked previously as a  mechanic (Tr. 150). He alleges disability due to physical and mental limitations resulting from being struck with a sledge hammer (Tr. 149).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He currently lived with his wife and child in a one-family dwelling (Tr. 13-14).  His wife worked at Soaring Eagle Casino (Tr. 16).  He "tried" to continue working as a mechanic out of his own shop but noted that "it cost more money to heat the shop than [he] actually made" (Tr. 17).  Back, and neck pain created difficulty arising in the morning (Tr. 17, 21). He also experienced problems concentrating (Tr. 17).  Since being hit in the head with a sledgehammer in 2006, he sometimes lost focus mid-task, noting that his customer base had shrunk due to his concentrational problems (Tr. 18).  He experienced constant headaches but

-2-

denied that they were accompanied by nausea or stomach upset (Tr. 19).

Plaintiff's inability to concentrate affected his interactions with others (Tr. 20-21). He reported depression and lack of motivation (Tr. 20-21). Despite numerous back adjustments, he continued to experience constant neck pain (Tr. 22). He currently took Lodine and Ultram regularly and Flexeril and Ibuprofen as needed (Tr. 23). His original dosage of pain medicine made him unable to function (Tr. 23). Sleep apnea created nightly sleep disturbances (Tr. 23). Two separate neurosurgical evaluations resulted in recommendations against surgery (Tr. 23-24). He underwent frequent back adjustments to address hip joint pain (Tr. 24). As a result of dropping a sledgehammer on his right foot (in the year following the original sledgehammer accident) he experienced foot pain (Tr. 26). Sitting for extended periods caused back discomfort (Tr. 26). Before being struck in the head with sledgehammer, he was able to lift up to 200 pounds but was now limited to "a bag of dog food" (Tr. 27).

In response to questioning by his attorney, Plaintiff stated that he was awaiting the report of a recently performed MRI of the lumbar spine (Tr. 27-28). He experienced pain radiating from his lower spine to his right foot (Tr. 28). His problems walking were exacerbated by a meniscus tear in one knee (Tr. 28). He stated that financial limitations prevented him from receiving knee treatment, but he had worn a knee brace prescribed by a treating physician for three months (Tr. 28). He also experienced finger numbness (Tr. 29). Concentrational limitations preventing him from following movie plots (Tr. 30). Whereas in the past, he was able to perform many car repairs without consulting a manual, his current

memory problems required him look up previously "simple" procedures (Tr. 31).

**B.    Medical Evidence**

**1.  Treating Sources**

In January, 2007, Plaintiff reported pain and pressure in the eyes (Tr. 232). An ophthalmological exam found non-infectious inflamation of the iris but no other abnormalities (Tr. 232, 244). In October, 2007, Plaintiff sought emergency treatment after hitting himself in the foot with a sledgehammer (Tr. 266). Imaging studies of the foot showed no evidence of a recent fracture (Tr. 369). Charles J. Lilly, M.D., observed that Plaintiff was fully oriented with an appropriate mood and affect (Tr. 345). In December, 2007, Plaintiff reported blurred vision and worsening head and neck aches (Tr. 316). A CT of the brain showed the possibility of "a subtle infarction" (Tr. 321).

In January, 2008, neurologist Stephen R. Burton noted Plaintiff's reports of ongoing issues related to the 2006 sledgehammer injury (Tr. 342, 358). Plaintiff denied sleep disturbances or irritability (Tr. 342). He reported forgetting recent conversations but alleged minimal dizziness (Tr. 342). He appeared fully oriented with an appropriate affect (Tr. 342). Gait and muscle strength appeared normal (Tr. 342). A February, 2008 MRI of the brain was unremarkable (Tr. 341, 353, 356). Plaintiff denied that he had ever "been really depressed" (Tr. 341, 352). Dr. Burton recommended Zoloft to improve Plaintiff's focus (Tr. 352). In July, 2008, Plaintiff sought emergency treatment for eye pain and tiredness (Tr. 280). A piece of steel was removed from his eye (Tr. 262, 448, 451). August, 2008 treating notes state that Plaintiff injured his knee "kick starting [a] Harley" (Tr. 253-254). Imaging studies

of the right knee were unremarkable (Tr. 257).

In May, 2009, Plaintiff reported continued headaches (Tr. 313).  In October, 2009, neurologist E. Malcolm Field, M.D. opined that additional testing was required (Tr. 338, 348).  The same month, a CT of the cervical spine showed "moderate" facet arthritis at C3-4 (Tr. 349). A July, 2009 imaging study of the cervical spine showed degenerative disc disease at C5-C6 (Tr. 245).  An MRI of the cervical spine showed stenosis due to arthritis at C5-6 (Tr. 246, 248, 332).  The same month, he sought emergency treatment for jaw pain (Tr. 272).  He reported that he fell off a ladder one week before seeking treatment (Tr. 272, 289).  He was advised to consult an oral surgeon (Tr. 281).  Imaging studies of the left hip showed minimal degenerative changes (Tr. 250).  Treating notes state that Plaintiff was currently taking Wellbutrin (Tr. 330).  Neurologist Brian R. Copeland, finding the absence of a neurological deficit or evidence of myelopathy, opined that surgery would not be beneficial but referred Plaintiff for "aggressive rehabilitation" (Tr. 247).  In November, 2009, Scott W. Zimostrad, Ph.D. noted Plaintiff's report that he worked at least 40 hours each week but was "highly inefficient" (Tr. 360).

In January, 2010, Russell J. Anderson, D.O. recommended "osteopathic manipulation" for recent lower back pain (Tr. 404).  March, 2010 treating notes by Dr. Anderson show a full range of motion in all extremities (Tr. 401).  In July, 2010, Plaintiff reported numbness and temporary loss of left eye vision (Tr. 396).  An MRI of the brain was essentially normal (Tr. 420-421, 428-429).  In February, 2011, Plaintiff received osteopathic manipulation for recurring upper, middle, and lower back pain (Tr. 425).

-5-

A March, 2011 MRI of the lumbar spine shows a bulging disc creating nerve root impingement at S1 (Tr. 491). Two days after the MRI report was issued, Dr. Anderson completed a Chronic Pain Residual Functional Capacity Questionnaire, finding that emotional factors "possibly" contributed to Plaintiff's symptoms (Tr. 432). He noted that he "would suggest [a] psychiatric evaluation" (Tr. 432). Dr. Anderson found that Plaintiff experienced depression (Tr. 433). However, he found that pain would "seldom" interfere with Plaintiff's attention and concentration; Plaintiff had no limitations in the ability to cope with workplace stress; and he experienced "minimal drowsiness" as a result of current pain medication (Tr. 433). Dr. Anderson estimated that Plaintiff could walk "at least [four]" blocks and could sit or stand for more than two hours at a stretch without requiring a position change (Tr. 433). He found that Plaintiff could sit, stand, or walk for a total of at least six hours in an eight-hour workday; lift 10 pounds frequently and 20 occasionally; and "bend and twist" frequently (Tr. 434).

## 2. Consultative and Non-Examining Sources

In August, 2009, Lisa E. Metler, Ph.D. conducted a psychological evaluation of Plaintiff, noting the December, 2006 sledgehammer injury (Tr. 471). Plaintiff reported that he subsequently experienced dizziness, forgetfulness, and vision problems (Tr. 472). He stated that he was able to drive, but focus problems prevented him from hunting (Tr. 473). He reported financial stress as a result of losing customers due to his need for a slower pace

(Tr. 473).  Dr. Metler observed that Plaintiff's speech was normal as to "rate, volume, prosody, and fluency" but noted a constricted affect (Tr. 475).  Intelligence testing was in the normal range (Tr. 477).  "Word list generation," information processing speeds were deemed "mildly impaired" (Tr. 477).  Fine motor dexterity was "moderately impaired" but motor speed was "superior" (Tr. 478).  Dr. Metler diagnosed Plaintiff with a "cognitive disorder not otherwise specified" but found no need for cognitive therapy (Tr. 479).

In January 2010, Matthew Branch performed a non-examining Physical Residual Functional Capacity Assessment on behalf of the SSA (Tr. 362-368).  He found that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and push and pull without limitation (Tr. 362).  Branch limited Plaintiff to frequent stair climbing and occasional climbing of scaffolds, ladders, or ropes; frequent balancing, stooping, kneeling, and crouching; and occasional crawling (Tr. 363).  Branch found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 364-365).  Branch noted that Plaintiff needed reminders to take medication but was able to perform a number of household and outdoor chores and visit with family members (Tr. 366).

The following month, Stuart Quirk, Ph.D. performed a consultative psychological evaluation of Plaintiff on behalf of the SSA (Tr. 369).  Dr. Quirk accurately summarized Plaintiff complaints and personal history in the first paragraph of the evaluation (Tr. 369).

However, Dr. Quirk's remaining findings clearly pertain to an individual other than Plaintiff[1] (Tr. 369-373).  The same month, a Psychiatric Review Technique by Ron Marshall, Ph.D. found the presence of an organic mental disorder causing mood changes (Tr. 374-375). Under the "'B' Criteria," Dr. Marshall found mild limitations in activities of daily living and social functioning and moderate deficiencies in concentration, persistence, or pace (Tr. 384). Dr. Marshall supported his findings with the treating source material, but also cited the erroneously included findings by Dr. Quirk stating that the interviewee was "sad and reserved" (Tr. 386 citing 371).   Dr. Marshall also completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff experienced moderate limitations in understanding, remembering, and following out detailed instructions; working within a schedule; responding appropriately to workplace changes; and traveling to unfamiliar places (Tr. 389).

On April 29, 2011 at the request of ALJ (Tr. 45), speech and language pathologist Cynthia Kilner performed a consultative evaluation (Tr. 481-489).  She deemed Plaintiff's speech articulation to be "within age expectations" along with wholly "normal" results in all other categories of speech (Tr. 482, 489).

### C.   Vocational Expert Testimony

The ALJ posed the following hypothetical question to the VE, taking into account

_____

[1]The erroneously included findings state that the individual performed military duty in during the Vietnam era, lived alone in a cabin, and used to work as a roofer (Tr. 369-373).

Plaintiff's age, education, and work background as a mechanic (Tr. 35):

> Lifting 20 pounds occasionally, 10 frequently [2], stand and sit six hours each eight-hour workday, only occasional exposure to ladders and to hazards such as heights and moving parts. I'm going to go ahead and limit to simple, routine tasks with just occasional changes in a routine work setting. With this residual functional capacity, could past work be performed? (Tr. 36).

The VE responded that the above limitations would preclude Plaintiff's past relevant work as a mechanic but would allow the light, unskilled work of a light cleaner (25,000 positions in the State of Michigan); packager (10,000); and the sedentary, unskilled position of assembler (35,000)(Tr. 37). The VE stated that the job testimony was limited to "routine, repetitive" work, adding that her job numbers excluded "fast-paced moving line assembler jobs" (Tr. 38-39). She noted nonetheless that the hypothetical individual was required to perform with a "certain amount of productivity within a scheduled period of time . . ." (Tr. 38). She opined that being off-task for five percent of the workday would not be work preclusive but 10 percent of the time would prevent all employment (Tr. 40).

*The ALJ closed the hearing by noting that the second page of a consultative examination report found in the file referred to an individual other than Plaintiff* (Tr. 13-16, 44-45). *The ALJ stated he intended to send Plaintiff to a consultative speech language*

---

[2]

    20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

*pathologist for an evaluation of whether he experienced aphasia* (Tr. 45).

### D.  The ALJ's Decision

Citing the medical transcript, ALJ Gaffaney found that Plaintiff experienced the severe impairments of an "organic mental disorder (status post closed head injury); degenerative disc disease of the cervical spine, and bilateral hip arthritis" but that none of the conditions met or medically equaled impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 54).  The ALJ found that Plaintiff possessed the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [C]an only occasionally climb ladders.  In terms of environmental limitations, the claimant can only occasionally be exposed to hazards (heights, moving parts, etc.).  The claimant's mental impairments limit the claimant to simple, routine tasks with only an occasional change in routine work setting (Tr. 56).

Citing the VE's findings, the ALJ found that Plaintiff could work as a cleaner, assembler, and packager (Tr. 59-60).

ALJ Gaffaney discounted Plaintiff's allegations of disability, finding that imaging studies of the cervical and lumbar spine did not support the professed functional limitations (Tr. 56).  In regard to mental limitations, the ALJ noted that December, 2007 imaging studies showed only a "mild" closed head injury (Tr. 57).  He observed that neuropsychological testing showed scores mostly in the normal ranges, nonetheless acknowledging mild impairment in processing speeds and "a limitations in processing speed associated with a cognitive impairment" (Tr. 58).

-10-

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In

evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff makes several arguments in favor of remand. *Plaintiff's Brief* at 13-24. First, he argues that the hypothetical question posed to the VE did not address his moderate limitations in concentration, persistence, and pace ("CPP") as found in the administrative decision. *Plaintiff's Brief* at 11-13. Second, he makes a generalized argument that substantial evidence did not support the ALJ's decision. *Id.* at 13-15. Third, he contends that the ALJ failed to adequately support his credibility determination. *Id.* at 15-19. Fourth, he argues that the RFC "failed to incorporate" his "severe emotional impairments." *Id.* at 19-20. In his fifth argument, Plaintiff also contends that the RFC did not reflect his true degree of limitation. *Id.* at 20-21. Sixth, he states that the hypothetical question posed to the VE did not account for all of his relevant limitations. *Id.* at 21-22. In his seventh argument, Plaintiff faults the ALJ for declining to adopt the treating opinions of Drs. Copeland, Field, and

-12-

Zimostrad and further, failing to account for imaging studies showing severe spinal stenosis. *Id.* at 22-24. Eighth, Plaintiff contends that the ALJ placed inordinate weight on the opinion of a non-examining source. *Id.* at 24-25.

The "Statement of the Case" contains a number of scattershot criticisms of the ALJ's findings. *Id.* At 1-10. Although the Court is not required to consider these "arguments," these criticisms will be addressed in discussing Plaintiff's second argument. Plaintiff's third through sixth arguments contain recitations of the law but include, at most, only one sentence pertaining to the facts of this case. *Id.* at 15-22. As such, these arguments for remand are waived. "'It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones'"*Preston v. Commissioner of Social Sec.* 2013 WL 3944419, *4 (E.D.Mich. July 31, 2013)(Randon, M.J.)(citing *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir.1997)).

Plaintiff's seventh argument that the ALJ did not accord appropriate weight to certain treating source opinions and eighth argument that undue weight was assigned to the opinions of non-treating sources can be discussed in tandem. *Plaintiff's Brief* at 22-25.

### A. The Vocational Job Testimony Accounted for Limitations in CPP

Plaintiff contends that modifiers of "simple routine tasks" posed to the VE were insufficient to account for his moderate deficiencies in concentration, persistence, or pace. *Plaintiff's Brief* at 11-13. He argues that VE's job responses, made in response to an incomplete set of limitations, do not constitute substantial evidence. *Id.* at 12 (citing *Edwards v. CSS,* 383 F. Supp. 2d 920, 930-931.

Plaintiff is correct that moderate deficiencies in CPP suggest substantial limitations which must be acknowledged in the hypothetical question to the VE. *Edwards,* 383 F.Supp.2d at 931. However, *Edwards* is inapplicable here. The court in *Edwards* found that the modifiers of "simple, routine, unskilled work," by themselves, were insufficient to account for the claimant's psychological restrictions. *Id.* at 930. While Plaintiff asserts that in this case, like *Edwards*, the hypothetical limitations were "simple, routine," in fact, the question from the present case limited the hypothetical individual to "simple routine tasks" *and* "just occasional changes in a routine work setting" (Tr. 36).

Further, *Edwards* does not hold that "simple,""routine," or "unskilled" are intrinsically inadequate to account for moderate deficiencies in CPP. The evidence of record and the ALJ's opinion must be considered in their entirety in determining whether the hypothetical limitations adequately describe the claimant's limitations. *Schalk v. Commissioner of Social Sec.,* 2011 WL 4406824, *11 (E.D.Mich. August 30, 2011) ("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations) (citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, at *7 (E.D.Mich.2008)). An ALJ is not required to include the phrase "moderate deficiencies in concentration, persistence, and pace" or other talismatic language in the hypothetical. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001); *Webb v. CSS,* 368 F.3d at 629, 633 (6th Cir. 2004).

The current record does not support greater psychological limitations than those in the hypothetical question. Dr. Burton noted in January, 2008 that Plaintiff appeared fully

-14-

oriented (Tr. 343). A number of other treating and consultative sources noted that he did not appear to experience significant cognitive problems. In August, 2009 Dr. Metler found no evidence suggesting the need for cognitive therapy (Tr. 479). The treating records show that Plaintiff took Zoloft and Wellbutrin to improve focus, but did not seek psychiatric treatment.

Plaintiff's CPP argument is further undermined by the VE's statement that her job findings were limited to "routine, repetitive" work that excluded "fast-paced moving line assembler jobs" (Tr. 38-39). Because the RFC in the administrative opinion is essentially identical to the hypothetical question to the VE, Plaintiff's argument that the RFC did not account for all of his relevant "emotional impairments" (fourth argument) fails for the same reasons.

While Plaintiff makes a subsequent one-sentence argument that the hypothetical question did not account for limitations created by cervical spinal stenosis, *Plaintiff's Brief* at 21-22, the ALJ's finding that Plaintiff was nonetheless capable of light work is supported by the March, 2011 assessment of treating source Dr. Anderson (Tr. 36, 57, 433-434). Because the finding that Plaintiff was capable of light work was supported by substantial evidence (in this case, a treating source opinion) remand on this basis is not available.

### B. Substantial Evidence Supports the ALJ's Findings

Plaintiff argues that the administrative findings were not supported by substantial evidence. *Plaintiff's Brief* at 13-15.

Under the deferential substantial evidence standard, an ALJ need not support his

findings with preponderance of the evidence. *Mullen, supra,* 800 F.2d at 545. However, ALJs are not permitted to disregard favorable statements from a record that, as a whole, demonstrates disability. "'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record" *Laskowski v. Apfel,* 100 F.Supp.2d 474, 482 (E.D.Mich.2000) (Roberts, J.) (citing *Cotter v. Harris,* 642 F.2d 700, 706 (3rd Cir.1981). "Substantial evidence cannot be based on fragments of the record." *Laskowski,* at 482.

Substantial evidence supports the ALJ's findings as to both the physical and mental conditions. Moreover, contrary to Plaintiff's implied argument, the ALJ's citation to the transcript in support of his determination does not amount to a distortion of the evidence. The ALJ acknowledged cervical spine studies showing some level of pathology, but cited Dr. Copeland's finding that cervical spine surgery was not warranted[3] (Tr. 56, 247). The ALJ also noted that December, 2007 and July, 2010 imaging studies of the brain were inconsistent with Plaintiff's allegations of significant cognitive limitations (Tr. 57, 321, 420-421).

---

[3]

In his "Statement of Facts," Plaintiff takes issue with the ALJ's observation that Dr. Copeland advised against surgery. *Plaintiff's Brief* at 4 (citing Tr. 57, 247). He contends that the fact that Dr. Copeland recommended rehabilitation instead of therapy does not imply that the neck condition was not disabling. *Id.* Even assuming that Plaintiff's interpretation of Dr. Copeland's advice is correct, other record evidence points to the conclusion that the neck condition did not preclude light work. Dr. Anderson opined in March, 2011 that none of Plaintiff's physical conditions precluded light work (Tr. 433-434). The ALJ's reasonable reliance on Dr. Anderson's assessment also defeats Plaintiff's one-sentence argument that the ALJ's credibility determination overlooked limitations created by the back and neck conditions (third argument) (Tr. 18-19).

-16-

Significantly, none of his treating or consultative sources opined that he required cognitive therapy.

Further, a number of the treating and consultative records undermine, rather than support the claim of significant mental and physical limitations. An October, 2007 and January, 2008 treating source observed that Plaintiff exhibited an appropriate mood and affect (Tr. 345, 342). The ALJ cited Dr. Anderson's March, 2011 finding that Plaintiff was capable of light work and that psychological issues would have minimal impact on his job performance (Tr. 57, 432-433). He also cited August, 2009 psychological testing results showing that Plaintiff's mental abilities had not been significantly altered by the December, 2006 accident (Tr. 58, 477-479).

### C. The Treating Physician Analysis

Plaintiff asserts that "clearly the ALJ did not accord controlling weight to the opinions and/or did not adopt treating source opinions," (seventh argument) stating that "the ALJ ignored the opinions of Drs. Copeland, Field, and Zimostrad." *Plaintiff's Brief* at 24. His eighth argument states that "a non-examining medical advisor is entitled to less weight than reports of other physicians who examine the claimant." *Id.* at 24.

An opinion of limitation or disability by a treating source is entitled to deference. "[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue, 573*

-17-

F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)).  Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion. *Wilson,* at 544.

In addition, "the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue* 661 F.3d 931, 937 (6th Cir. 2011)(citing 20 C.F.R. § 404.1527(c)(2)).

Plaintiff advances his "treating physician" argument undaunted by the facts that (1) neither Copeland, Field, nor Zimostrad were treating sources (2) none of these consultative sources opined as to Plaintiff's functional limitations, much less stated that Plaintiff was disabled and, (3) the ALJ permissibly adopted the opinion of *treating* source Dr. Anderson in finding that Plaintiff was capable of exertionally light work (Tr. 57).  While Dr. Zimostrad's notes state that Plaintiff worked full time but was "highly inefficient" appears to be based on Plaintiff's report rather than Dr. Zimostrad's firsthand observation (Tr. 360). Even assuming that Drs. Copeland, Field, or Zimostrad had opined that Plaintiff experienced a greater level of limitation than found in the RFC, their finding were "entitled to no special

degree of deference."[4] *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994)(citing *Atterberry v. Secretary of Health & Human Servs.,* 871 F.2d 567, 572 (6th Cir.1989)).

Further, the ALJ's reliance on Dr. Anderson's March, 2011 assessment was particularly appropriate, given that it was performed with benefit of a recent MRI of the lumbar spine (Tr. 432, 491). The ALJ did not err in relying on the consultative findings of Dr. Metler in finding that Plaintiff's cognitive limitations were not work preclusive, noting that he considered her evaluation in limiting Plaintiff to "simple routine tasks with only an occasional change in routine work setting" (Tr. 58). The argument that the ALJ did not abide by the substantive or procedural requirements of the "treating physician" rule is without merit.

The review of this case was hampered rather than aided by Plaintiff's brief. Nonetheless, in consideration of Plaintiff's entitlement to judicial review, considerable resources were spent piecing together legal arguments (containing long recitations of various areas of disability law but almost no facts pertaining to this case) with the allegations contained in the "Statement of Facts" section of the brief. Additional time was required to recheck the transcript to assess the possible merit of underdeveloped or wholly undeveloped assertions of error. The "throw-everything-at-the-wall-and-see-what-sticks" approach taken by Plaintiff's counsel, *see Trans Rail America, Inc. v. Hubbard Tp.* 2012 WL 4483738, *4 (N.D.Ohio September 27, 2012), places an additional burden on already strained

---

[4]See footnote 3, above, regarding Plaintiff's "Statement of Facts" "argument" regarding Dr. Copeland's findings.

administrative and judicial resources.

In closing, Plaintiff is advised that the recommendation to uphold the administrative decision should not be read to trivialize his limitations as a result of his workplace accident. Nonetheless, the ALJ's determination was well within the "zone of choice" accorded to the fact-finder at the administrative hearing and as such, should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than 20 pages in length

unless by motion and order such page limit is extended by the court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.


Dated: August 23, 2013                     s/ R. Steven Whalen_____
                                           R. STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on
August 23, 2013, electronically and/or by U.S Mail.

                                           s/Michael Williams
                                           Case Manager to the Honorable
                                           R. Steven Whalen