UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEE LATOSKI,

       Plaintiff,	Case No. 12-cv-13293

v.	HONORABLE STEPHEN J. MURPHY, III

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
                                         /

**ORDER ADOPTING REPORT AND RECOMMENDATION** (document no. 17),
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** (document no. 12),
**AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** (doc. no. 15)

    The Social Security Administration ("SSA") denied Plaintiff and claimant Robert Lee Latoski's application for Disability Insurance Benefits ("DIB") in a decision issued by Administrative Law Judge ("ALJ") George Gaffaney on November 23, 2011. After the SSA Appeals Council declined to review the decision, Hatcher appealed to this Court. The Court referred the matter to a United States Magistrate Judge, and the parties filed cross motions for summary judgment. On August 23, 2013, the magistrate judge issued a Report and Recommendation ("Report"), suggesting denial of Latoski's motion and grant of the Commissioner of Social Security's ("Commissioner") motion. Report, ECF No. 17.

    Latoski filed timely objections to the Report. Although he lists one objection, he essentially makes two arguments: that the Report gave improper weight to the opinions of various physicians' opinions; and that the hypothetical question posed to the vocational expert ("VE") by the ALJ did not address his moderation limitations in concentration, persistence, and pace.

    Civil Rule 72 does not require the Court to hold a hearing when reviewing a magistrate

judge's findings. Fed. R. Civ. P. 72; *U.S. v. Raddatz*, 447 U.S. 667, 674 (1980) (holding 28 U.S.C. § 636 did not require a hearing for de novo review of a magistrate's findings); *see also Estate of Wyatt v. WAMU/JP Morgan Chase Bank*, 09-14919, 2012 WL 1622897 (E.D. Mich. 2012). After examining the record and considering Latoski's objections de novo, the Court concludes that his objections do not have merit. Accordingly, the Court will adopt the Report, grant the Commissioner's motion for summary judgment, deny Latoski's motion for summary judgment, and dismiss the case.

## STANDARD OF REVIEW

Reports and recommendations for dispositive motions issued by a magistrate judge are reviewed pursuant to Civil Rule 72(b). The district judge referring the motion is only required to perform a de novo review of the magistrate judge's findings if the parties "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). Here, Latoski objected to two findings made by the magistrate judge as to the ALJ's decision. Those findings will be reviewed de novo by the Court.

Judicial review of decisions by the Commissioner is authorized by 42 U.S.C. § 405(g). A reviewing court only examines an ALJ's determination to see if it is "supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Therefore, a review of the Commissioner's decision gives great deference to an ALJ's findings. A court should not replace an ALJ's judgment of the facts with its own view of the evidence unless an ALJ's

2

finding is completely without support. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679 (6th Cir. 1989) ("We do not review the evidence de novo, make credibility determinations nor weigh the evidence."). If an ALJ's decision is supported by substantial evidence, the Court must accept the finding, even if substantial evidence would support a different finding as well. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

## BACKGROUND

Robert Lee Latoski was 47 years old at the date of his application for benefits on September 22, 2009. Administrative Record ("A.R.") at 116. He completed the twelfth grade and had received vocational training in heavy duty truck repair and automotive repair. A.R. at 155. Latoski last worked as a mechanic from 1997-2009. A.R. at 150. He first alleged disability beginning December 1, 2006, but later amended the onset of disability date to March 30, 2007. A.R. at 116, 123. Latoski claimed that he was injured when he was struck in the head by a sledgehammer, which led to memory loss, imbalance, one crushed disc, and three bulging discs. A.R. at 149.

Latoski testified that he tried to work out of his mechanic's shop, but "it cost more money to heat the shop last year than I actually made." A.R. at 17. Regarding his injuries, he stated that pain in his back and neck sometimes prevented him from getting out of bed in the mornings and he had difficulty concentrating. A.R. at 17, 21. He testified that he had developed constant headaches. A.R. at 20. He took Lodine and Ultram regularly and Flexeril and Ibuprofen as needed. A.R. at 23. He could not function with his originally prescribed dosages. *Id.* He said that he was diagnosed with sleep apnea. *Id.*

Latoski stated that two different neurosurgeons advised against neck surgery. A.R. at 23-24. He also reported hip joint pain. A.R. at 24. After the incident when he was hit in

the head with a sledgehammer, Latoski hit himself in the right foot with a sledgehammer. A.R. at 26.

Before he was hit in the head with a sledgehammer, Latoski was able to lift up to 200 pounds, but he no longer tried to lift more than a bag of dog food. A.R. at 27. He reported pain radiating from his lower spine to his right foot. A.R. at 28. In addition, he stated that he suffered from a torn meniscus in his right knee for which he wore a knee brace for approximately three months. *Id.* Once or twice a month, he experienced numbness in his fingers. A.R. at 29.

The Commissioner initially denied Latoski's disability application on June 19, 2012. A.R. at 1-3. Latoski then requested an administrative hearing, and, on April 8, 2011, he appeared with counsel via video conference before ALJ Gaffaney. A.R. at 9. A vocational expert, Juletta Haren, also testified in person. *Id.*

On November 23, 2011, the ALJ issued his final report denying Latoski's applicaiton for benefits. A.R. at 52-60. Overall, ALJ Gaffaney found that Latoski was not disabled as of the date last insured, December 31, 2010. He determined that Latoski had a residual functional capacity within the range of light work, noting that he could only occasionally be exposed to hazards and that his mental impairments limited him to simple, routine tasks with only an occasional change in routine work setting.

I. <u>The ALJ's Decision</u>

When applying for disability benefits, a claimant has the burden to establish an entitlement to benefits. *Wyatt v. Sec'y of Health & Human Servs.,* 974 F2d 680, 683 (6th Cir. 1992). In reviewing an application, an ALJ must examine the evidence using the five-step evaluation process specified by 42 U.S.C. § 423 and 20 C.F.R. § 404.1520. The

"claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). If the claimant can establish an entitlement to benefits at any step, the inquiry ends and the claimant is entitled to benefits.

First, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Here, the ALJ found that Latoski had not engaged in any substantial gainful activity from his alleged onset date through his date last insured, December 31, 2010. A.R. at 53.

Second, the ALJ must determine whether the claimant suffers a "severe impairment" that "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Here, the ALJ found that Latoksi suffered from three severe impairments: organic mental disorder (status post closed head injury); degenerative disc disease of the cervical spine; and bilateral hip arthritis, which caused "more than a minimal effect" on Latoski's ability to work. A.R. at 54.

Third, the ALJ must determine whether the claimant can prove the impairment "meets or equals" an impairment category found in the Social Security listing at 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. If a claimant meets one of these categories, the claimant is considered disabled regardless of age, education, or work experience considerations. 20 C.F.R. § 404.1520(d). Here, the ALJ found that Latoski's impairments, whether individually or combined, did not meet or equal the criteria for listings 1.04, disorders of the spine, or 12.02, organic mental disorders.

Section A of Listing 1.04 requires "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy

with associate muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, 1.04. Here, the ALJ concluded that, while the medical evidence established a diagnosis of degenerative disc disease, the record was devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation. A.R. at 54.

To meet or equal a 12.02 listing, a claimant must meet both "paragraph A" and "paragraph B" criteria. Although the ALJ implicitly determined that Latoski met certain paragraph A criteria, he also concluded he did not meet the criteria of paragraph B, which requires showing at least two of the following symptoms:

   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.02, ¶ B. The ALJ found that Latoski only had mild restrictions in activities of daily living; mild difficulties in social functioning; moderate difficulties regarding concentration, persistence or pace; and no episodes of decompensation. A.R. at 54-55.

The 12.02 criteria may also be met if the claimant alternatively meets "paragraph C" criteria. The ALJ found that Hatcher did not meet the criteria of paragraph C, which requires a finding of:

C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

   1. Repeated episodes of decompensation, each of extended duration; or

6

> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

12.02, ¶ C. Here, the ALJ found that no such criteria were present. A.R. at 55.

Fourth, if, as here, the claimant cannot meet or equal one of the listed entries, the ALJ will make a determination of the claimant's "residual functional capacity" to engage in work, and the claimant must show he cannot engage in work he has performed in the past. In making this determination, the ALJ will consider all the relevant evidence. The ALJ must first conclude there is an underlying medical impairment capable of producing the claimant's symptoms, and then make a judgment as to the intensity, and limiting effects of the symptoms on the claimant's ability to work. The ALJ uses this judgment to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1520(e).

The ALJ concluded that Latoski had the residual function capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). A.R. at 56. He determined that Latoski had the exertional limitations of being able to lift twenty pounds occasionally, being able to lift ten pounds frequently, and being able to sit for six hours and to stand for six hours in an eight-hour workday. *Id.* He also determined that Latoski could only occasionally climb ladders and be exposed to hazards, such as heights and moving parts. *Id.* In addition, the ALJ determined that Latoski's mental impairments limited him to simple, routine tasks with only an occasional change in routine work setting. *Id.*

The ALJ concluded that, while Latoski's medically determinable impairments could reasonably be expected to cause cognitive function loss and a series of musculoskeletal

impairments, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible. *Id.* He found that the limiting effects alleged were unsupported by the objective medical evidence. *Id.* He also determined that Latoski's allegations were vague and equivocal. A.R. at 57.

In addition, the ALJ concluded that the opinion evidence in the record indicated a higher level of functioning than alleged. *Id.* The ALJ gave weight to treating physician Dr. Anderson's opinion that put Latoski within the light range of functional capacity. *Id.* He also gave weight to the evidence Latoski submitted from Dr. Lisa Melter, an independent licensed psychologist, based on an interview where objective tests were given, which showed scores within normal ranges. A.R. at 58. He also gave weight to the opinions of the consultive examiner, who opined to substantially the same functional capacity and Dr. Ron Marshall, on behalf of the state determination agency, whose assessment reviewed the longitudinal record. *Id.* The ALJ did not place substantial weight on the opinion of Dr. Stuart Quirk, a consultative psychologist because the parties agreed that his opinion was based on information that was clearly about a person other than Latoski. *Id.*

Fifth, the ALJ must determine, based on the residual function capacity and the claimant's age, work experience, and education, whether the claimant can engage in other work that is available in the national economy. 20 C.F.R. § 404.1520(f). Considering Latoski's age, education, work experience, and residual functional capacity along with the testimony of the vocational expert, the ALJ first determined that Latoski would not be able to continue to work as a mechanic. A.R. at 59. The ALJ found that Hatcher was qualified to work as a cleaner, assembler, or packager, titles for which collectively thousands of jobs existed in the State of Michigan. A.R. at 59-60. The ALJ then concluded that Anderson was

"not disabled" as defined by the Social Security Act. A.R. at 60.

The Report recommended denying Latoski's motion for summary judgment and granting summary judgment to the Commissioner, finding that the ALJ's decision was supported by substantial evidence. Report at 20. Pursuant to 28 U.S.C. § 636(b)(1), on September 5, 2013, Latoski filed an objection to the report. The Commissioner filed no response.

## DISCUSSION

I. Medical Opinion Evidence

Latoski makes several objections regarding the weight of the medical opinion evidence at bar, arguing that, as a whole, the evidence accepted by the ALJ focused only on his physical capabilities rather than his cognitive and psychiatric impairments. Pl's Objection at 2-6, ECF No. 18. He contends that too much weight was given to Dr. Anderson as a treating physician because he offered an opinion solely as to physical limitations, that Dr. Copeland and Dr. Field should have been considered treating physicians, and that less weight should have been given to the opinions of Dr. Burton and Dr. Metler. *Id.*

A. Legal Standard

20 C.F.R. § 404.1527 specifies how an ALJ must evaluate medical opinion evidence. The ALJ must adhere to these standards as a matter of due process. *Wilson*, 378 F.3d at 544. An ALJ is required to give controlling weight to the opinions of a treating source if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ chooses not to give a treating source controlling

weight, the ALJ must still "apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544.

Normally, an ALJ's failure to follow this rule is an error which may constitute a lack of substantial evidence. "[C]ourts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source, as § 1527(d)(2) requires." *Id.* But this error is not always dispositive, and may be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (quoting *Wilson*, 378 F.3d at 547) (internal citation omitted). Nevertheless, the "ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where [the court] cannot engage in 'meaningful review' of the ALJ's decision." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544).

The opinion of a consulting physician is not accorded the same deference as that of a treating physician. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *McCoy v. Astrue*, 09-11897, 2010 WL 3766473 at *3 (E.D. Mich. Sept. 21, 2010). This is because "the treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight

10

into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker*, 40 F.3d at 794.

B. Analysis

Latoski does not challenge the ALJ's reliance on the opinion of Dr. Anderson, his treating physician, regarding his physical limitations. The ALJ's residual function capacity finding contained the same findings that Dr. Anderson's opinion did, which is that Latoski was limited to lifting twenty pounds occasionally and ten pounds frequently and standing and sitting for six hours each during a workday. A.R. at 56, 433-35.

Instead, Latoski contends that the ALJ should have placed more emphasis on his psychological limitations. He argues that more emphasis should have been placed on the opinions of Dr. Copeland and Dr. Field. However, these doctors are not treating sources because they each only examined Latoski once, and, in fact, both referred to their examinations of Latoski as neurological consultations. A.R. at 338, 339. Therefore, their opinions are not accorded the same deference as treating physicians. *Barker*, 40 F.3d at 794. Contrary to Latoski's contention, even assuming that these doctors are neurologists who treat patients for a shorter time frame than other physicians, one neurological consultation does not turn them into treating physicians.[1]

In any event, Latoski presents no evidence from these two opinions that are sufficient to disturb the ALJ's determination. Although Dr. Copeland recommended "aggressive rehabilitation" of Latoski's spine injuries, he presented nothing about psychological

---

[1] Although, as Latoski points out, the magistrate judge included a discussion of Dr. Copeland's and Dr. Field's findings under the heading "Treating Sources" in his "Background Facts" section, *see* Report at 4-5, that error of organization is not fatal to his determination since he clearly provided the analysis that these doctors were not treating physicians. Report at 17-18.

11

limitations. A.R. at 247. Accordingly, such advice does not show that the determination of residual functional capacity was inappropriate. As the magistrate judge concluded, Dr. Field's concerns about problems after a traumatic brain injury appear to be based solely on the narrative presented by Latoski and his wife rather than independent testing. A.R. at 338. Nevertheless, the ALJ took into account Latoski's loss of his ability to concentrate by crafting his residual functional capacity to limit him to simple, routine tasks with only an occasional change in routine work setting. A.R. at 56. Thus, the ALJ placed appropriate weight on these opinions.

Furthermore, although Latoski argues that more emphasis should have been placed on Dr. Burton's findings that he had a mild closed head injury and trouble concentrating or focusing on tasks, which affected his productivity, *see* A.R. at 341, the assessment was accepted by the ALJ, who relied on it in part to establish that Latoski's impairment was milder than he alleged. A.R. at 57.

Latoski complains that Dr Metler's report was generated in the course of litigation; however, he presented it himself in the instant proceeding. The ALJ appropriately determined that it should be given significant weight because it was based upon objective tests. A.R. at 58; *see* A.R. at 471-80. Even though Latoski argues that Dr. Metler only opined about causation rather than impairment, that statement is unsupported by the record, which shows that Dr. Metler engaged Latoski in a battery of tests, producing some normal results and reflecting some limitations with respect to Latoski's cognitive functioning. A.R. at 476-78. Therefore, the analysis that the ALJ conducted regarding this source was appropriate.

Accordingly, the Court concludes that the ALJ's determination regarding medical

opinion evidence is supported by substantial evidence.

II. <u>Failure to Incorporate Moderate Deficiencies in Concentration, Persistence, or Pace into Hypothetical</u>

Latoski's other objection is that the hypothetical that the ALJ gave to the vocational expert did not appropriately present his moderate deficiencies in concentration, persistence, or pace when viewed in conjunction with his cognitive and memory issues. He argues that the hypothetical needed to state that he had these moderate deficiencies rather than to present the limitation of "simple, routine tasks with just occasional changes in a routine work setting." A.R. at 36.

A. <u>Legal Standard</u>

Generally, the limitations found by an ALJ should be reflected in the hypothetical posed to the vocational expert. *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005) ("[A]n ALJ's hypothetical questioning must 'accurately set[] forth the plaintiff's physical and mental impairments.'") (quoting *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)); *Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). An ALJ's hypothetical question "need only include the alleged limitations of the claimant that the administrative law judge accepts as credible and that are supported by the evidence." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. App'x 542, 548 (6th Cir. 1993). "An improper hypothetical question cannot serve as substantial evidence under § 405(g), and can result in a remand or reversal." *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 931 (E.D. Mich. 2005).

Difficulty in concentration, persistence, and pace pertains to a claimant's "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt, 404, subpt.

13

P, app. 1, § 12.00(C)(3). "[S]pecific reference to timely completion of tasks" is not required whenever difficulties in concentration, persistence, or pace are found. *Bohn-Morton*, 389 F. Supp. 2d at 807. "Decisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work." *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375 at *3 (E.D. Mich. Sept. 30, 2010). This Court has determined that a hypothetical was proper when it involved "a mild amount of stress" and "only simple one, two or three step operations." *Smith-Fedler v. Comm'r of Soc. Sec.*, 103 F.Supp. 2d 1011, 1014 (E.D. Mich. 2000).

B. <u>Analysis</u>

Latoski relies on *Edwards v. Barnhart* in support of his argument. The ALJ in *Edwards* referred to "jobs entailing no more than simple, routine, unskilled work." *Edwards*, 383 F.Supp. 2d at 924; 931. The hypothetical at issue was more specific in its further statement regarding "occasional changes in a routine work setting." A.R. at 36. In addition, the finding in *Edwards* can be limited to its specific facts since the Court concluded that, given the claimant's impairments, the hypotheticals "[w]hile close, [were] not sufficient, and [did] not fully convey Plaintiff's limitations in concentration." *Edwards*, 383 F. Supp. 2d at 930.

In contrast, the hypothetical at bar was adequate because it "accurately described the effect of this limitation in concrete terms." *Sutherlin v. Comm'r of Soc. Sec.*, No. 10-10540, 2011 WL 500212 at *3 (E.D. Mich. Feb. 8, 2011). The record did not support the need for a greater elaboration of Latoski's impairments. Notably, the hypothetical included similar language to match the findings of Dr. Marshall, who reviewed Latoski's medical records for the state Department of Social Services ("DSS"). Dr. Marshall found that Latoski had a

14

moderate limitation in concentration, persistence, or pace. A.R. at 384. He also determined that Latoski was able to follow simple instructions and to work with others, but may have difficulty retaining more complex instructions. A.R. at 390. This opinion supports the wording of the hypothetical.

Latoski's argument on this point is brief and conclusory. "There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace." *Lewicki*, 2010 WL 3905375 at *3. Accordingly, the Court finds that the hypothetical question included those limitations supported by the record.

## CONCLUSION

Substantial evidence supports both the ALJ's assessment of the various medical opinions and the hypothetical provided to the vocational expert. No legal rule requires finding otherwise. The Court will not overturn the ALJ's findings, and, therefore, will deny Latoski's motion for summary judgment, and grant the Commissioner's motion for summary judgment.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the Magistrate Judge's Report (document no. 17) is **ADOPTED** over Latoski's objections.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (document no. 12) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment

(document no. 15) is **GRANTED**.

    **SO ORDERED**.

                                s/Stephen J. Murphy, III
                                STEPHEN J. MURPHY, III
                                United States District Judge

Dated: September 30, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2013, by electronic and/or ordinary mail.

                                s/Carol Cohron
                                Case Manager